UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GREGORY A. GRIMM,

                Plaintiff,            Civil Action No. 15-11723
                                          Honorable Sean F. Cox
v.                                   Magistrate Judge David R. Grand

SETERUS, INC., CHASE HOME FINANCE, LLC,
AND FEDERAL NAIONAL MORTGAGE,

                Defendants.
_____/

**REPORT AND RECOMMENDATION TO GRANT DEFENDANTS SETERUS, INC.,
AND FEDERAL NATIONAL MORTGAGE ASSOCIATION'S MOTION TO
DISMISS [4] AND TO DISMISS THE COMPLAINT AGAINST ALL DEFENDANTS**

On April 14, 2015, plaintiff, Gregory Grimm ("Grimm") filed a complaint in the Oakland

County Circuit Court against defendants Seterus, Inc. "(Seterus"), Chase Home Finance, LLC

("Chase"), and Federal National Mortgage Association ("Fannie Mae").  (Doc. #1, Ex. A).  In

short, Grimm alleges that the defendants violated his rights under various federal and state laws

in connection with the servicing of his mortgage loan relating to his home at 741 Vivian Lane,

Oxford, Michigan (the "Property").  On May 14, 2015, defendants Seterus and Fannie Mae

removed the action to the United States District Court for the Eastern District of Michigan.

(Doc. #1).[1]

_____

[1] Defendant Chase was not a party to the removal papers and has not appeared in the case.  Nor
has Grimm filed a proof of service as to Chase.  Nevertheless, the Court may properly consider
the sufficiency of Grimm's claims against Chase.  *Hall v. Green Tree Servicing, LLC*, 2012 WL
2367137 (E.D. Mich. June 21, 2012) ("a court dismissing a plaintiff's claims against moving
defendants may *sua sponte* dismiss non-moving defendants as well where it is clear that the same
ruling would inevitably apply to each of the defendants.") (internal quotation and citation
omitted); *see also Laues-Gholston v. HSBC Mortg. Services*, 2015 WL 927561 (E.D. Mich.
March 4, 2015) (same).  Accordingly, where appropriate, the Court will refer to all three

On July 15, 2015, defendants Seterus and Fannie Mae filed a motion to dismiss Grimm's complaint pursuant to Fed. R. Civ. P. 12(b)(6), and the motion has been fully briefed by the parties. (Docs. #4, 7, 9). The motion was referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Doc. #5). Pursuant to Eastern District of Michigan L.R. 7.1(f)(2), the Court finds that the facts and legal issues are adequately presented in the briefs and on the record, and declines to hold a hearing.

## I.      RECOMMENDATION

For the reasons stated herein, the Court **RECOMMENDS** that the motion to dismiss **[4]** be **GRANTED**, and that Grimm's complaint be dismissed.

## II.     REPORT

### A.  Background

On July 30, 2004, Grimm obtained a mortgage loan (the "Loan) from Flagstar Bank to purchase the Property. (Comp. ¶7, Ex. 1). He alleges that Flagstar assigned its rights to Chase, and that on September 1, 2014, Seterus began servicing the Loan. (*Id.*, ¶9; Ex. 3). On October 8, 2014, Fannie Mae purchased the Loan from Chase. (Comp. ¶15; Comp., Ex. 8; Doc. #4, Ex. C).

Grimm alleges that through August 2014, he was in full compliance with the Loan terms, and was timely on his mortgage payments. (Comp. ¶¶9-12). On August 7, 2014, Chase mailed

---

defendants collectively as the "Defendants." In considering Grimm's substantive allegations, the Court notes that he has not alleged any wrongful conduct by Chase. In fact, he virtually never differentiates between any of the Defendants when making allegations of wrongful conduct. The only allegation in Grimm's complaint that mentions any conduct by Chase is paragraph 8, which alleges, "In August, 2014 [Grimm] received his monthly statement from Chase." (Comp., ¶8). Grimm attached a copy of that statement as an exhibit to his complaint. (*Id.*, Ex. 2). Importantly, that statement shows a "Total Payment Due [by September 1, 2014] of $1,087.39" – the exact amount Grimm claimed he owed. (*Id.*; *see also infra* at 4). Given this, and Grimm's failure to allege any specific wrongdoing by Chase (and for the other reasons discussed below), Grimm's claims against Chase should be dismissed.

Grimm his monthly mortgage statement.  (*Id.* ¶8; Ex. 2).  Importantly, that statement indicates a "Total Payment Due" of $1,087.39.  (*Id.*, Ex. 2).  That payment was due by September 1, 2014, with a grace period through September 15, 2014.  (*Id.*).  It is undisputed that as of September 11, 2014, Grimm had not made this payment.  (*Id.*, Ex. 4).  Seterus wrote Grimm a letter dated September 11, 2014, advising him that it was the new servicer of his mortgage loan, effective as of September 1, 2014.  (*Id.* ¶9; Ex. 3).[2]  Grimm alleges that he waited to receive a billing statement from Seterus, and that when he received no such statement by September 15, 2014 (the last day of his grace period), he called Seterus on that date.  (*Id.*, Ex. 3).  Grimm alleges that a Seterus employee told him that not only was he late in submitting his September mortgage payment, but he owed an additional $951.02 in unrelated fees.[3]  (*Id.*, Ex. 4, 6).  Grimm admits that he knew he needed to pay his September mortgage payment to be "current," yet "chose" not to make it:

> I made it clear that I disputed the $951.02 in fees, yet offered to make the regular payment at that time via phone in a "good faith" attempt to keep the loan current.  However, the $10.00 fee to make a payment (and the disputed

---

[2] Chase was to have provided a similar notice in advance of Seterus' notice.  (*Id.*).  Though Grimm does not say so explicitly (and it is not necessarily relevant to the resolution of the instant motion), he implies that he received such a notice because he alleges, "[h]aving been notified that my loan was transferred to Seterus, I patiently waited for a billing statement from Seterus until Monday, September 15th, 2014," and this allegation would not make any sense if the only notice he received was Seterus' letter *dated* September 11, 2015.

[3] According to a subsequent letter written by Grimm's counsel, these fees were related to "the obtaining and recordation of a Sheriff's deed, including title search, in 2012.  The matter was the subject of litigation between Mr. Grimm, [Chase], and others.  The litigation was settled and dismissed."  (*Id.*, Ex. 6).  In his complaint, however, Grimm does not actually raise any specific claims relating to these fees.  Nor did Grimm argue in his response brief that these fees support any of his claims.  In fact, as discussed below, Grimm essentially made no response to defendants' motion to dismiss, but rather simply regurgitated the vague, inadequate allegations contained in his complaint.  Particularly where a party is represented by counsel, it is not the Court's responsibility to scour the complaint to identify a potential unpled claim.  And, Grimm's counsel clearly has been put on notice that this type of pleading and "advocacy" is unacceptable.  *See e.g., Haisha v. Countrywide Bank, FSB*, 2011 WL 3268104, at *4-5 (E.D. Mich. Jul. 29, 2011); *Kanouno v. Sun Trust Mort.*, 2011 WL 5984023 (E.D. Mich. Nov. 30, 2011).

$951.02) really offended me, so I chose not to make any payments at that
time…

(*Id*., Ex. 4; *see also id.*, Ex. 5, 6).[4]

Grimm also alleges he did not receive an October billing statement from Seterus, and that
he called Seterus on October 1, 2014, to inquire into the matter.  (*Id*., Ex. 4).  Grimm alleges that
a Seterus customer service representative told him that he still owed the $951.02 in fees, as well
as the past two months' mortgage payments (for September and October).  (*Id*.).  Grimm did not
pay his mortgage payments at this time.  (*Id*.).  The next day, Grimm retained his current
counsel.  (*Id*.).

On October 16, 2014, Grimm received a notice of default from Seterus, demanding that
he cure the default by paying $3,125.80 (two monthly payments of $1,087.39 plus the $951.02
disputed fee amount).  (*Id*., ¶11; Ex. 5).  On October 17, 2014, Grimm submitted a letter to
Seterus again disputing the $951.02 in fees, but admitting, "I owe payments for September and
October."  (*Id*., Ex. 4).  Grimm enclosed two checks, each in the amount of $1,087.39, for his
September and October mortgage payments.  (*Id*., Ex. 4).  On October 21, 2014, Grimm's
counsel sent an additional letter to Seterus contesting the fees and explaining their origin, *supra*
fn. 3, and alleging that Grimm's late mortgage payments were the result of Seterus's late billing
statement, and thus not Grimm's fault.  (*Id*., ¶13; Ex. 5).  On October 28, 2014, Seterus wrote to
Grimm's counsel, though neither Grimm nor Seterus provided the salient pages of that
correspondence to the Court.  (*Id*., Ex. 7).  On October 29, 2014, Seterus wrote to Grimm,

---

[4] The allegation in Grimm's complaint that he "mailed in his September 2014 payment, which
payment was received and cashed" is quite misleading in its placement in the complaint.  (*Id*.,
¶10).  That allegation comes right after one about his receipt of Seterus' September 11, 2014
letter (*id.*, ¶9), and right before one about an October 16, 2014 letter (*id.*, ¶11), implying that he
timely made the payment in the interim.  However, Grimm's check was not dated until *October
17, 2014*.  (*Id.*, Ex. 4).  In other words, Grimm's own documents show that he did not tender his
September payment until more than one month after the relevant grace period expired.

clarifying that Fannie Mae, not Chase, owned the Loan, and that Seterus would investigate the issues raised by Grimm.  (*Id*., ¶15; Ex. 8).  Grimm alleges that, "[t]hereafter, Seterus notified Plaintiff of it's [sic] *intention* to institute foreclosure of the Loan."  (*Id*., ¶16) (emphasis added).  However, Grimm does not explain the nature, form, or date of this alleged notification.  On April 14, 2015, Grimm instituted the current action.

Grimm's complaint alleges 9 counts: (1) fraudulent misrepresentation; (2) violation of the Michigan Brokers, Lenders, and Servicer Licensing Act; (3) breach of contract; (4) violation of the Federal Debt Collection Practices Act; (5) violation of the Michigan Fair Debt Collection Practices Act; (6) accounting; (7) quiet title; (8) slander of title; and, (9) injunctive relief.  In addition, Grimm alleges that "Seterus has repeatedly engaged in fraudulent conduct servicing loans throughout the United States," and he attached to his complaint lengthy on-line reviews of Seterus, and a website for a class action law firm representing individuals alleging that Seterus engages in unscrupulous billing practices resulting in wrongful foreclosures.  (*Id*., Ex. 9).

### B.  Legal Standard

Federal Rule of Civil Procedure 12(b)(6) permits a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." *Id*.  In evaluating a motion to dismiss under Rule 12(b)(6), "[c]ourts must construe the complaint in the light most favorable to plaintiff, accept all well-pled factual allegations as true, and determine whether the complaint states a plausible claim for relief." *Albrecht v. Treon,* 617 F.3d 890, 893 (6th Cir.2010) (internal brackets, quotation marks, and citations omitted); *see also Etts v. Deutsche Bank Nat'l Trust Co.*, 2015 WL 5026192, at *3 (E.D. Mich. Aug. 25, 2015).  To survive a motion to dismiss, a complainant must plead specific factual allegations, and not simply legal conclusions, in support of each claim. *Ashcroft v. Iqbal,* 556 U.S. 662, 678-679 (2009).  "A complaint will be dismissed

unless, when all well-pled factual allegations are accepted as true, the complaint states a 'plausible claim for relief.'" *Etts,* 2015 WL 5026192 at *3 (quoting *Iqbal,* 556 U.S. at 679).

In ruling on Fannie Mae and Seterus's motion to dismiss, this Court may consider the entire complaint, including documents attached thereto, documents incorporated by reference in the complaint and central to the claims, and any matters on which a court may take judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007). "[I]f a factual assertion in the pleadings is inconsistent with a document attached for support, the Court is to accept the facts as stated in the attached document." *Williams v. CitiMortgage, Inc.,* 498 Fed. App'x. 532, 536 (6th Cir.2012) (citation omitted); *see also Etts,* 2015 WL 5026192 at *3 (quoting *Iqbal,* 556 U.S. at 679).

### C. Analysis

#### i. *Fraudulent Misrepresentation*

In Count 1 of his complaint, Grimm alleges fraudulent misrepresentation by Defendants related to their representations that he was in default on the Loan. Federal Rule of Civil Procedure 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *Id.* The Sixth Circuit has interpreted Rule 9(b) to broadly require complainants alleging fraud to "(1) *specify the statements* that the plaintiff contends were fraudulent, (2) *identify the speaker*, (3) state *where* and *when* the statements were made, and (4) explain *why* the statements were fraudulent." *Frank,* 547 F.3d at 569-70 (internal quotation marks and citation omitted) (emphasis added). Furthermore, a plaintiff pleading fraudulent misrepresentation must sufficiently allege that:

> (1) defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it

with the intention that it should be acted upon by plaintiff; (5) that
plaintiff acted in reliance upon it; and (6) that he thereby suffered injury.

*Elsheick v. Select Portfolio Servicing, Inc*., 566 Fed. App'x 492, 498 (6th Cir. 2014). Thus,
insofar as Grimm attempts to assert a fraudulent misrepresentation claim, he must "allege the
time, place, and content of the alleged misrepresentation on which he or she relied; the
fraudulent scheme; the fraudulent intent of [the other party]; and the injury resulting from the
fraud." *Fluegge v. Nationstar Mortgage, LLC*, 2015 WL 4430062, at \*8 (E.D. Mich. July 20,
2015) (quoting *Coffey v. Foamex L.P.,* 2 F.3d 157, 161–62 (6th Cir.1993)); *see also Gregory v.
CitiMortgage, Inc.,* 890 F.Supp.2d 791, 801 (E.D. Mich. 2012). Here, Grimm fails to satisfy
both the Rule 9(b) standard and the requirements for alleging fraudulent misrepresentation.

Grimm's fraudulent misrepresentation claim is essentially that "Defendants intentionally
represented that [he] was in default of the Loan and was liable for various sums due to the
alleged default," when in fact they "knew… or should have known their representations were
false" because he "was not in default." (Comp. ¶¶20-23). Grimm alleges that he "suffered
substantial economic loss" as a result of Defendants' misrepresentations. (*Id*., ¶25).

These allegations fail to state a claim for relief because they lack the factual details
required under Rule 9(b) and the above case law, and are nothing more than a mere "recital of
the law." *See Frank,* 547 F.3d at 569–70 (requiring specific factual information to substantiate a
fraud claim); *Fluegge,* 2015 WL 4430062 at \*8 (requiring factual details to color a claim of
fraudulent misrepresentation). Moreover, the very documents Grimm attached to his complaint
belie his allegations. As discussed above, *supra* at 3-4, Grimm admitted that he did not timely
pay his September 1 or October 1, 2014 mortgage payments, which constitutes a default of the
Mortgage terms. (Comp., Ex. 1, 4, 5). Per the Loan agreement, the lender is entitled to submit a
"notice of default" in writing to the borrower when the borrower fails to timely submit a

payment. (*Id*., Ex. 1). A payment is untimely if it is received after 15 calendar days from the first of the month. (*Id*.). If the monthly payment is not paid in full and on time, the borrower is in default. (*Id*.). Thus, as the servicer of the Loan during the relevant time, Seterus was entitled to mail Grimm a notice of default when Grimm failed to timely submit his Loan payments. (*Id*., Ex. 3). Accordingly, Seterus' representation to Grimm in its October 17, 2014 correspondence that he was "in default" was not an untrue statement.[5] As such, Grimm has not adequately alleged fraud or fraudulent misrepresentation by the defendants.

Grimm's attempt to bolster his fraud claims by attaching two unauthenticated website printouts to his complaint does not change this analysis. (Comp., Ex. 9). Though Grimm fails to articulate any specific relevance to his case, he appears to suggest that because Seterus has been subjected to other lawsuits alleging that it operates a large-scale scheme to repossess real property (by charging inordinate late fees and/or accelerating foreclosure proceedings), he too has been the victim of fraud at Seterus' hands. However, merely pointing to allegations made by *others* about how Seterus handled *their* loans provides none of the required factual detail about how Seterus allegedly committed fraud *against Grimm*.

---

[5] The allegations in Grimm's complaint that he was always "current on the Loan" and "paid the Loan as directed," (*id*., ¶¶12, 32), is clearly belied by Grimm's own documents, and therefore cannot defeat Defendants' motion to dismiss. *Williams*, 498 Fed. App'x. at 536. As for demonstrating reliance and injury, Grimm fails to allege any facts from which one could conclude that he relied, to his detriment, on Seterus's "notice of default." In his complaint, Grimm simply states, in conclusory fashion, that "Defendants knew… or should have known their representations were false, and yet made the representation… intending that [he] rely on [them]." (Comp. ¶23-24). As a result, Grimm alleges that he has "suffered substantial economic loss." (*Id*., ¶25). Yet, contrary to any claim of detrimental reliance, Grimm concedes that he issued the September and October 2014 mortgage payments because he knew he owed them, not due to his receipt of Seterus' notice of default. *Supra* at 3-4. Grimm's payment of these valid obligations does not constitute "detrimental reliance," nor show that he suffered a cognizable "economic loss."

In sum, Grimm's bare allegation of fraudulent misrepresentation is belied by the very documents he attached to his complaint, and falls far short of the heightened pleading requirements that govern that claim. Accordingly, the claim should be dismissed.

ii. *Violation of the Michigan Brokers, Lenders, and Servicer Licensing Act*

In Count 2 of his complaint, Grimm alleges that Defendants violated the Michigan Brokers, Lenders, and Servicer Licensing Act ("MBLSLA") by making false representations and improper charges directly causing him injury.

The MBLSLA sets forth requirements for the licensing of mortgage brokers and servicers in Michigan. The relevant part of the MBLSLA states:

> It is a violation of this act for a licensee or registrant to do any of the following:
>
> (a) Fail to conduct the business in accordance with law, this act, or a rule promulgated or order issued under this act.
> (b) Engage in fraud, deceit, or material misrepresentation in connection with any transaction governed by this act.
> (c) Intentionally or due to gross or wanton negligence, repeatedly fail to provide borrowers material disclosures of information as required by law.

M.C.L. § 445.1672(a)-(c). Courts have interpreted the MBLSLA to require disclosure of certain material information in an attempt to protect home owners. However, when relevant material disclosures are made in a loan agreement, the MBLSLA is not violated. *See Hanning v. Homecomings Financial Networks, Inc*., 436 F.Supp.2d 865 (W.D. Mich.200) (mortgage broker did not violate MBLSLA when mortgagors were fully apprised of terms of their mortgage, including all fees). Here, Grimm's claim under the MBLSLA fails for numerous reasons.

First, several Eastern District of Michigan judges have held that the MBLSLA does not provide a private right of action. *See, e.g*., *Shaya v. Countrywide Home Loans, Inc.,* 2011 WL 1085617 (E.D. Mich. Mar. 22, 2011); *Collins v. CitiMortgage, Inc*., 974 F.Supp.2d 1034 (E.D.

Mich. 2013); *Hood v. Chase Manhattan Mortg. Corp.*, 2013 WL 162930 (E.D. Mich. April 16, 2013).  For this reason alone, Grimm's claim fails.  Second, it is clear the MBLSLA does not apply to Defendants Fannie Mae or Chase.  The MBLSLA expressly exempts "[a] depository financial institution whether or not the depository financial institution is acting in the capacity of a trustee or fiduciary." M.C.L. § 445.1675(a).  A "depository financial institution" is defined as "a state or nationally chartered bank, a state or federally chartered savings and loan association, savings bank, or credit union, or an entity of the federally chartered farm credit system."  M.C.L. § 445.1651a(f).  Consequently, the MBLSLA "does not apply to a corporate instrumentality of the United States, such as Freddie Mac [or Fannie Mae]," *Pendracki v. BAC Home Loans Servicing, LP*, 2012 WL 3887509, at *5 (E.D. Mich. Sept. 7, 2012 (additional citation omitted).  Likewise, Chase, a nationally chartered bank, is also exempt.  *See Id.*  As such, Grimm's MBLSLA claim could apply, if at all, only to Seterus.

Yet Grimm failed to plead adequate factual detail to state a claim for relief against Seterus.  Grimm makes only the conclusory allegation that Seterus violated the MBLSLA by making "false representations and improper charges" (Comp. ¶28) and that this conduct "was the proximate cause of damages, injuries and losses" suffered by him.  (*Id.*, ¶29).  Grimm's reliance on such boilerplate language does not satisfy threshold pleading requirements.  *Iqbal*, 556 U.S. at 678*; see also Barkho v. Homecomings Financial, LLC*, 657 F.Supp.2d 857 (E.D. Mich. 2009) (finding that mortgagor's "vague and conclusory allegations" regarding mortgagee's alleged violation of MBLSLA must be dismissed).  Furthermore, Grimm was fully apprised of the Loan repayment terms, including late fees and deadlines.  (Comp., Ex. 1).  Grimm has not explained how, in light of this fact, Seterus violated the MBLSLA.

### iii. *Breach of Contract*

Grimm's third cause of action is for breach of contract.  Under Michigan law, a party asserting a breach of contract must establish: "(1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach."  *Miller-Davis Co. v. Ahrens Const., Inc.*, 848 N.W.2d 95, 104 (2014) (internal citations omitted).  Grimm's discombobulated allegations fail to satisfy these standards.

In his Complaint, Grimm alleges that despite paying "the Loan as directed," Defendants "foreclosed on the [Property]," constituting a breach of the Loan contract.  (Comp. ¶31-33). Grimm alleges that this breach "was a proximate cause of injuries, damages, and losses of [him]…"  (*Id*., ¶34).  Grimm offered no support for this conclusory assertion, and the support Grimm did provide establishes that he did not pay "the Loan as directed." *Supra* at 3-4.  In their motion to dismiss, Seterus and Fannie Mae assert that at the time Grimm filed the complaint, neither Fannie Mae nor Seterus had initiated foreclosure proceedings on the Property.  (Doc. #4). Although the Court cannot consider that unattested factual averment in considering the instant motion to dismiss, it is noteworthy that in his response motion, Grimm changes his allegation regarding the nature of the alleged breach, and no longer appears to be asserting that a foreclosure in fact occurred.  Instead, Grimm suggests two alternative breaches: (1) that "Defendants [he does not specify which] … gave notice of default and foreclosure[6] and have

---

[6] While Grimm's bare bones complaint is difficult to comprehend, it appears that he is claiming that Seterus' "notice of default," (Comp., Ex. 5) is actually a "notice of foreclosure."  That is an untenable stretch, however, as merely referencing the *future availability* of a remedy is not tantamount to a *present exercising* of that remedy.  Grimm's reading of the notice is also unwarranted in light of the Loan terms detailing a precise notice required in the event Seterus invoked "the power of sale" remedy, which he does not claim to have received.  (Comp., Ex. 1, Mortgage at ¶22).

been charging default interest;"[7] and (2) that "[t]o claim Plaintiff to be in default and charge default interest, when the same is untrue, is clearly a breach of the mortgage contract." (Doc. #7 at 10, 12).   Under either clarification, Grimm fails to adequately plead a breach of contract occurred.

Grimm cites *Rose v. National Auction Group, Inc*., 466 Mich. 453 (2002) for the proposition that "the Michigan Supreme Court held a fraudulent scheme that induced Plaintiff to sign the contract will support a breach of contract action." (Doc. #7 at 13).   Actually, the Michigan Supreme Court held exactly the opposite in that particular case, and the case has no bearing on Grimm's breach of contract claim, in any event.   In *Rose*, the Michigan Supreme Court held that the plaintiffs' breach of fiduciary duty claim *failed* because they had participated in a real estate shill scheme with the alleged fiduciary and therefore could not have "reasonably reposed faith, confidence, and trust" in that person.   *Rose*, 466 Mich. at 464; *id.* at 469 ("In allegedly suggesting the shill bidder scheme, defendants did not breach any duty to plaintiffs."). Moreover, because Grimm has not alleged that Defendants breached the contract by fraudulently inducing him to enter into it, *Rose* is inapplicable to Grimm's case.

Finally, while it may be true that under the terms of the Loan agreement, the lender may not default the borrower when he is compliant with the terms of the agreement, the same cannot be said where he has contravened one of its material terms.   (Comp., Ex. 1, Note at ¶6; Mortgage at ¶22).[8]   As detailed in the Loan agreement submitted by Grimm, the lender is entitled to issue a

---

[7] Grimm cites to "Exhibit '9', attached" for this proposition.   (Doc. #7 at 10) (claiming that Seterus "does continue to charge default interest.").   However, Exhibit 9 to Grimm's brief has nothing whatsoever to do with statements sent to him by Seterus or charging him default interest.

[8] Grimm attempts to support his breach of contract claim by attaching the Loan contract, presumably leaving it to the Court to apply the allegations to the contractual terms without guidance from him.   As discussed above, this is inappropriate advocacy, and the Court will not attempt to create a claim for Grimm.

"notice of default" in writing to Grimm if he fails to timely submit a payment. (*Id*.). A payment is late if it is received more than 15 calendar days after the first of the month. (*Id*.). If Grimm's monthly payment is not timely paid, he is in default. (*Id*.). And, such default gives the lender the right (but not obligation) to accelerate Grimm's payments and institute foreclosure proceedings. (*Id.*, Ex. 1, Mortgage at ¶22 ("The notice shall specify … (d) that the failure to cure the default on or before the date specified in the notice may result in acceleration of the sums [due] and sale of the Property."). Because Grimm, by his own admission, failed to timely make his mortgage payments which were due on September 1, 2014 and October 1, 2014, Seterus was entitled to mail Grimm its notice of default, and to specifically identify foreclosure as a potential remedy if he did not timely cure the default. (*Id.*, ¶9; Ex. 3, 4). Therefore, the Loan agreement, reviewed and signed by Grimm, expressly contradicts the breach alleged here. Accordingly, Grimm's breach of contract claim should be dismissed.

### iv. *Violation of the Fair Debt Collection Practices Act*

For his fourth count, Grimm alleges that the Defendants violated the Fair Debt Collection Practices Act ("FDCPA"). The FDCPA prohibits debt collectors from engaging "in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." *Montgomery v. Huntington Bank*, 346 F.3d 693 (6th Cir. 2003).

Liability under the FDCPA is limited to "debt collectors," defined as:

> any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another ... the term includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts.

15 U.S.C. § 1692(a)(6).  The FDCPA exempts mortgage service companies, such as Seterus, that manage outstanding debts on behalf of others, "so long as the debts were not in default *at the time servicing was assigned*." 15 U.S.C. § 1692(a)(6)(F)(iii); *see also Barksdale v. Green Tree Servicing LLC*, 2014 WL 7205009, at *2-3 (E.D. Mich. Dec. 17, 2014) (emphasis in original) (citing *Bridge v. Ocwen Fed. Bank, FSB,* 681 F.3d 355, 359 (6th Cir. 2012)); *Martin v. Select Portfolio Serving Holding Corp.,* 2008 WL 618788 at *4 (S.D. Ohio 2008) ("[w]here the debt was assigned for servicing before default of the loan, the assignee is exempt from the [FDCPA] because the assignee becomes a creditor and is collecting its own debt").

Grimm alleges that he first received a notice of default on October 16, 2014.  (Comp. ¶11; Ex. 5).  Grimm alleges that Seterus was assigned to service the Loan in September 2014. (*Id*., ¶9; Ex. 3).  Other documents in the record show that Fannie Mae purchased the Loan from Chase on October 8, 2014.  (Doc. #4-4).  Since the complaint clearly alleges that the Defendants acquired (or disposed of) their respective interests in the Loan *before* Grimm was notified of a default, they are not a "debt collectors" under the FDCPA with respect to Grimm's Loan. (Comp. ¶9, 11).  Accordingly, Grimm's FDCPA claim against them should be dismissed.

v.   *Violation of the Michigan Fair Debt Collection Practices Act*

Despite captioning Count 5 as a claim for violation of the Michigan Fair Debt Collection Practices Act, this claim actually alleges that "Defendants" violated the Michigan Occupational Code ("MOC"), M.C.L. § 339.901 *et seq.* (Comp. ¶39-41).  With respect to this claim, Grimm merely alleges that "Defendants engaged in illegal conduct as above stated."  (*Id*., ¶40).  He next alleges that "this conduct was the proximate cause of damages, injuries and losses suffered by Plaintiff as set forth above."  (*Id*., ¶41).  This is the entirety of Grimm's allegations, and such naked allegations clearly cannot "survive a motion to dismiss for failure to state a claim."

14

*Cheesewright v. Bank of Am., N.A.*, 2013 WL 639135, at \*5 (E.D. Mich. Feb. 21, 2013) (internal citations omitted) (citing *Iqbal,* 556 U.S. at 678).

Grimm's claim also fails on the merits, as he has failed to explain how the MOC applies to Defendants.  Like the FDCPA, the MOC does not apply to entities "whose collection activities are confined and are directly related to the operation of a business other than that of a collection agency...."  M.C.L. § 339.901(b).  The MOC expressly exempts "[a] state or nationally chartered bank when collecting *its own claims*" from coverage.  M.C.L. § 339.901(b)(ii) (emphasis added).  As such, "any actions by [Defendants] to foreclose on [Grimm's] residence or to collect outstanding loan payments do not constitute debt collection under the MOC," and this claim should be dismissed.  *Cheesewright,* 2013 WL 639135, at \*5.

### vi.  *Accounting*

Grimm's sixth cause of action is for an accounting.  (Comp. ¶42-43).  Such a claim is "a legal action to compel a defendant to account for and pay over money owed to the plaintiff but held by the defendant," *McDerment v. Biltmore Properties, Inc.*, 2005 WL 3556147, at \*10 (Mich. Ct. App. Dec. 29, 2005) (brackets omitted) (citing Black's Law Dictionary (7th ed.)), and only lies when there is a dispute over how much has been paid between the parties.  *See Boyd v. Nelson Credit Centers, Inc.*, 132 Mich. App. 774, 779, 348 N.W.2d 25, 27 (1984) (external citation omitted).  That is, "an accounting may not be had where the action is for a specific sum due under a contract."  *Id*.  Finally, "whether a plaintiff has stated a cause of action for an accounting must be determined from the facts pled in the plaintiff's complaint rather than from the prayer for relief."  *Id*.

Michigan courts construe a claim for an accounting as an independent remedy, hinging upon other causes of action.  *McDonald v. Green Tree Servicing, LLC*, 2014 WL 1260708, at \*8

(E.D. Mich. Mar. 27, 2014) (internal citations omitted) (citing *Boyd*, 132 Mich. App. 774, 779–80 (1984)).  Furthermore, an accounting is considered by Michigan courts to be an extraordinary equitable remedy, only available when other legal remedies are demonstrably inadequate. *McDonald,* 2014 WL at *8 (citing *Bradshaw v. Thompson,* 454 F.2d 75, 79 (6th Cir.1972)).

In asserting his claim for an accounting, Grimm merely alleges, "Defendants have failed, neglected and refused to account for the payments [he] has made on the Loan."  (Comp. ¶43). Grimm has a fundamental misunderstanding of the accounting remedy.  Accounting is not an entitlement to financial accounting records *per se*; rather, accounting is a remedy that stems from a defendant's failure to perform legal obligations, and upon a plaintiff's showing that alternative legal remedies are inadequate to redress such a failure.  There must also be a question as to an amount of money due.  *Boyd*, 132 Mich. App. 774, 779 (1984).

Here, there is no dispute that Grimm did not pay his September or October Loan payments on time, which triggered the notice of default.  (Comp., Ex. 4, 5).  Upon discussions with Seterus, Grimm became aware of the disputed amounts.  (*Id*., Ex. 4).  Thus, the fundamental element of a financial discrepancy is absent from Grimm's complaint.

Furthermore, Grimm's own exhibits belie his allegation, and show that once Seterus was assigned to service of the Loan, Seterus provided Grimm (and his counsel) with information regarding his concerns and the servicing of his Loan.  (*Id*., Ex. 7 (Seterus 10/28/14 letter in response to letter from Grimm's counsel, stating "Enclosed is information related to your client's loan") and 8).  Grimm does not identify any specific request for information which Seterus refused to comply with.  Consequently, he has not satisfied any of the threshold pleading requirements entitling him to an accounting.  *Iqbal,* 556 U.S. at 678-679.

vii.   *Quiet Title*

While Grimm asserts a claim to quiet title, the Sixth Circuit has unequivocally held that "quiet title" is not a claim, but a remedy.  *Goryoka v. Quicken Loan, Inc*., 519 F. App'x 926, 929 (6th Cir. 2013) (holding that district court properly dismissed plaintiff's quiet title count because it is not a cause of action but rather a remedy); *see also Berry v. Main St. Bank*, 977 F. Supp. 2d 766, 776 (E.D. Mich. 2013) (same).  The availability of the quiet title remedy hinges upon the success of Grimm's other claims.  Where, as here, there is no surviving cause of action, the quiet title remedy is unavailable and should be dismissed.  *Id.*

viii.   *Slander of Title*

Count 8 of Grimm's Complaint is for slander of title.  Such claims were recognized at common law "as a *remedy* for malicious publication of false statements that disparage a plaintiff's right in property."  *B & B Investment Group v. Gitler,* 581 N.W.2d 17, 20 (1998) (emphasis added).  In Michigan, slander of title claims have both a common-law and statutory origin.  *Id.*  To establish either, a plaintiff must show falsity, malice, and special damages.  *Id.; see also* M.C.L.A. § 565.108.[9]

In order to establish slander of title at Michigan common law, "a plaintiff must show… that the defendant maliciously published false statements that disparaged a plaintiff's right in property, causing special damages."  *B & B Investment Group,* 581 N.W.2d at 20 (citing *Sullivan*

---

[9] The Michigan statute provides:

> No person shall use the privilege of filing notices hereunder for the purpose of slandering the title to land, and in any action brought for the purpose of quieting title to land, if the court shall find that any person has filed a claim for that reason only, he shall award the plaintiff all the costs of such action, including such attorney fees as the court may allow to the plaintiff, and in addition, shall decree that the defendant asserting such claim shall pay to plaintiff all damages that plaintiff may have sustained as the result of such notice of claim having been so filed for record.

*v. Thomas Organization, PC,* 276 N.W.2d 522 (1979) (additional citations omitted). Michigan courts have interpreted "special damages" to include litigation costs, impairment of vendibility, and loss of rent or interest. *Id.* (additional citations omitted).

Grimm asserts in his claim for slander of title that, due to the Defendants "illegal conduct," they do not have a valid security interest in the Property. (Comp. ¶49). Grimm further alleges that in spite of Defendants' lack of a valid security interest in the Property, they nonetheless caused a Sherriff's sale to take place without proper notice. (*Id.*, ¶49-50). Grimm alleges that, consequently, there is an improper cloud on the Property's title. (*Id.*, ¶51). Grimm alleges that this cloud proximately caused him to suffer unidentified "injuries." (*Id.*, ¶52). Grimm's request for a slander-of-title remedy lack merit.

First, Grimm has not identified a slanderous notice or publication. The only "publication" relied on in the complaint is a "notice of default" letter *from Seterus to Grimm*. (*Id.*, ¶ 11; Ex. 5). And, as discussed above, such notice was legitimate in light of Grimm's admitted failure to timely pay his September and October 2014 Loan payments. (*Id.*, Ex. 1, 4). In the absence of a slanderous publication, the slander-of-title remedy is inappropriate.[10] *See Derbabian v. Bank of America*, 587 Fed. App'x. 949 (2014) (holding that mortgagors failed to state slander of title claim under Michigan law against mortgagee, absent allegations identifying any false statements that disparaged their right to the property or that they suffered special damages).

---

[10] Grimm does allege that Seterus notified him of an intent to foreclose (Comp. ¶ 16), but as noted above, *supra* fn. 6, issuing the notice of default was not tantamount to instituting foreclosure proceedings. And, Grimm's bald assertion in his response brief that he "is told foreclosure is being pursued" (Doc. #7 at 11), is the type of bare-bones allegation that is inadequate to state a claim for relief. *Iqbal,* 556 U.S. at 678-679.

Second, Grimm has not alleged that either Fannie Mae or Seterus *maliciously* published the allegedly false statements, as required by Michigan courts in slander of title claims. Importantly, "for purposes of a slander of title claim, malice may not be inferred merely from the filing of an invalid lien; the plaintiff must show that the defendant knowingly filed an invalid lien with the intent to cause the plaintiff injury." *Wells Fargo Bank v. Country Place Condominium Ass'n*., 848 N.W.2d 425 (2014).

Finally, in his complaint, Grimm merely states that Defendants' "illegal conduct" "was the proximate cause of damages, injuries and losses suffered by [him]." (Comp. ¶52). Such a superficial and conclusory statement does not amount to a factually supported allegation of slander of title; Grimm has neither alleged that any false publications by Defendants resulted in injury to his property rights, nor that such publications have resulted in special damages. Both allegations are indispensable to a slander of title claim. *B & B Investment Group,* 581 N.W.2d at 20 (additional citations omitted). As such, Grimm has not adequately alleged that the slander-of-title damages remedy is warranted, and this claim should be dismissed.

ix.   *Request for Injunctive Relief*

Grimm's final claim is a request for injunctive relief. The issuance of a preliminary injunction is governed by Fed. R. Civ. P. 65. Injunctive relief is "an extraordinary remedy that should issue only when justice requires." *Ramanauskas v. Blue Horseshoe Holding Co*., 2015 WL 2329082, at *1 (Mich. Ct. App. May 14, 2015); *see also Pontiac Fire Fighters Union Local 376 v. Pontiac,* 753 N.W.2d 595 (2008). "A preliminary injunction is the strong arm of equity which should not be extended to cases that are doubtful or do not come within well-established principles of law." *United States v. Michigan*, 230 F.R.D. 492, 494 (E.D. Mich. 2005) (citing

*Am. Civil Liberties Union of Kentucky v. McCreary County,* 354 F.3d 438 (6th Cir.2003)) (additional citation omitted).

Federal district courts have developed four factors in analyzing a preliminary injunction request: "(1) whether the plaintiff has a strong likelihood of succeeding on the merits; (2) whether the plaintiff will suffer irreparable injury absent the injunction; (3) whether issuing the injunction will cause substantial harm to others; and (4) whether the public interest will be furthered by the issuance of the injunction. *Gonzales v. Nat'l Bd. of Med. Examiners*, 225 F.3d 620, 625 (6th Cir. 2000) (citing *Michigan State AFL–CIO v. Miller,* 103 F.3d 1240, 1249 (6th Cir.1997)).   Michigan courts embrace a near-identical approach.   *See, e.g., Davis v. City of Detroit Fin. Review Team*, 821 N.W.2d 896, 918 (2012) (string citations omitted).

Although no one factor is controlling, "a finding that there is simply no likelihood of success on the merits is usually fatal."   *Gonzales*, 225 F.3d at 625.   The movant must show irreparable injury – harm compensable by money damages does not warrant injunctive relief. *Michigan*, 230 F.R.D. at 494.   The Sixth Circuit has made clear that the proof required to obtain a preliminary injunction exceeds that required to survive a summary judgment motion.   *Id.* (citing *Leary v. Daeschner,* 228 F.3d 729, 739 (6th Cir.2000)).

Here, for the reasons discussed above, Grimm's underlying causes of action fail to plead claims on which relief may be granted.   He therefore cannot show entitlement to injunctive relief, which "is an equitable remedy, not an independent cause of action."   *Terlecki v. Stewart*, 278 Mich. App. 644, 663 (2008).

## III.    RECOMMENDATION

For the foregoing reasons, **IT IS RECOMMENDED** that the Motion to Dismiss filed by Defendants Seterus, Inc. and Federal National Mortgage Association **[4]** be **GRANTED**, and that Grimm's complaint be **DISMISSED** against all Defendants.

Dated: December 14, 2015                              s/David R. Grand
Ann Arbor, Michigan                                   DAVID R. GRAND
                                                     United States Magistrate Judge


## NOTICE TO THE PARTIES REGARDING OBJECTIONS

Within 14 days after being served with a copy of this Report and Recommendation and Order, any party may serve and file specific written objections to the proposed findings and recommendations and the order set forth above.  *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d)(1).  Failure to timely file objections constitutes a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140, (1985); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005).  Only specific objections to this Report and Recommendation will be preserved for the Court's appellate review; raising some objections but not others will not preserve all objections a party may have.  *See Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987); *see also Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).  Copies of any objections must be served upon the Magistrate Judge.  *See* E.D. Mich. LR 72.1(d)(2).

A party may respond to another party's objections within 14 days after being served with a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1).  Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on December 14, 2015.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager